## In re WILLIAMS.

No. 25773.   June 18, 1935.

Saul A. Yager and Frank G. Anderson, for State Bar of Oklahoma.

Sam Massingale, Clayton Carder, and Charles Swindall, for respondent.

PHELPS, J.   J. R. Turner verified a complaint before the administrative committee of section 18 of the State Bar in which he alleged that the respondent, W. M. Williams, was employed as attorney to represent one Clarence Lyon, wherein Lyon was charged with rape on the person of Mable Turner, the affiant's 13 year old daughter; that on the day before the preliminary trial the respondent went to affiant and solicited the affiant to persuade said Mable Turner to arrange her testimony at the preliminary hearing in such a way as to exonerate the defendant. The method sought to be used, according to said affidavit, was to urge the prosecutrix to remain mute upon the witness stand. The affidavit further alleges that Turner refused to enter into this scheme, but that the prosecutrix overheard the conversation and, fearing that Lyon or his family would do her personal violence, did remain mute, refused to testify at the preliminary hearing, and was confined in jail for contempt of court.

Upon this charge the administrative committee, upon due hearing, found that after the charge was filed against Lyon and before the preliminary hearing, Williams, acting in the capacity of attorney for Lyon, went to the home of the prosecutrix and had a conversation with her father and other relatives, and suggested to these relatives of the prosecutrix that the charge be settled without dragging it into court and bringing disgrace upon the prosecutrix and her family. The administrative committee further found that Mr. Williams' purpose in going to the home of the prosecuting witness was to obtain a settlement of a criminal action without considering the guilt or innocence of the party charged, which act on the part of Williams was a violation of professional ethics. The committee further found, however, that Mr. Williams did not offer anything of value to get the case settled, or make any suggestion as to how the case could be disposed of, nor did he advise anyone in the presence of the prosecutrix that she should remain mute on the witness stand.

Upon this finding the administrative committee recommended that Mr. Williams be reprimanded for unprofessional conduct. The Board of Governors, in reviewing the charge, found in substance that the purpose

of respondent in going to the home of the prosecuting witness was to settle a criminal action without considering the guilt or innocence of the party charged with the crime. They further found that there was no money or other thing of value offered to have the case settled, but concluded that, otherwise, the finding of the administrative committee was contrary to the weight of the evidence, and was, therefore, disapproved; and recommended to this court that the respondent be disbarred.

Respondent filed his petition in this court for review. His first contention is:

"That the Board of Governors were without authority of law to disregard the findings of fact by the administrative committee and make a new and additional finding of fact without taking additional testimony or granting the respondent a trial de novo."

Section 4240, O. S. 1931, provides that:

"It shall be the duty of each administrative committee, and it shall have the power, to receive and investigate complaints as to the conduct of members, make findings and recommendations and forward its report to the Board of Governors for action, which may either act upon the report or may take additional evidence, or set aside the report and hear the whole case de novo, as it may elect."

It is the contention of respondent, and he argues in his brief, that the Board of Governors, under the above-quoted section of the statute, must either approve the report of the administrative committee, take additional evidence, or hear the whole case de novo.

With these contentions we cannot agree. From a careful reading of the whole act, it is our conclusion that it was the intention of the Legislature to vest the Board of Governors with authority to dispose of a case reported to it by the administrative committee "as it may elect." It is not confined in its power, duty, and authority to the narrow and restricted area claimed by respondent. In other words, the Board of Governors is authorized under this provision of the statute to sit as an "appellate court" and review the findings and conclusions of the administrative committee, and upon such review it may adopt the report in toto; it may adopt it in part and reject it in part; it may take additional evidence, or it may disregard all the proceedings had before the administrative committee and hear the whole case itself, in much the same way as a court of record reviews the findings and conclusions of a referee.

Respondent next contends:

"That the evidence is insufficient to justify disciplinary action."

Neither can we agree with this contention. Evidently the administrative committee did not believe all of the testimony offered on behalf of the prosecution. This is reflected in its findings that no money was offered to get the case settled; nor that respondent advised that the prosecutrix remain mute, for there was some testimony given to this effect, but upon these questions, the finding exonerated the respondent.

We have carefully read this whole record, and there was evidence given in support of the prosecution with which we are not greatly impressed, just as the administrative committee was evidently not impressed with it. According to respondent's own statements, regardless of what may have been the motives actuating him, he committed, at least, a very grave indiscretion. He was defending his client charged with a very serious offense against the laws of the state. No one finds fault with a lawyer for diligently defending his client's interest, if that defense is confined within proper bounds, but respondent testified himself that on the day before the preliminary trial was to be had, without consulting the county attorney who had charge of the prosecution, he went to the home of the prosecuting witness and asked the father of the prosecuting witness "if there wasn't some way that this case could be settled." He also testified that it was his intention "to settle it first and then take it up with the county attorney," further stating, "I had in mind that if they could get together on it and get rid of it without going into court, that it would be better for all"; "I wanted to get everything in proper shape and get rid of it without going into court, if possible, I wanted to settle it out of court."

It is, therefore, our conclusion that the finding that:

"The purpose of the respondent in going to the home of the prosecuting witness was to obtain a settlement of a criminal action * * * without considering the guilt or innocence of the party charged with the crime,"

—was amply sustained by the testimony of respondent himself, and this act certainly is of sufficient gravity to merit disciplinary action.

Respondent further contends that:

"The findings and recommendations of the

Board of Governors is wholly unjustified and not sustained by competent evidence."

.. One cannot read this entire record without being convinced that respondent was guilty, at least, of such indiscretion as to constitute a violation of professional ethics. Neither can one read the entire record without being impressed that the prosecution, in some respects, has not been actuated entirely by worthy motives.

Therefore, in view of the fact that there is at least some evidence in the record tending to show malicious motives actuating some of those participating in the prosecution (entirely outside, however, of any member of the administrative committee or Board of Governors, all of whom acted honestly and conscientiously in the discharge of their duties), we feel it our duty to be doubly diligent in seeing that no injustice is done. With that end in view, we adopt the recommendation of the administrative committee and confine the punishment of the respondent to a reprimand.

It is therefore the order of this court that respondent, for his indiscretion and violation of professional ethics, should be, and he is hereby, reprimanded.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, CORN, and GIBSON, JJ., concur. WELCH, J., absent.